## Consulting Engineers Inc. v. Insurance Co. of North America

*Stephen J. Springer,* for plaintiffs.
*Andrew L. Braunfeld, Andrew J. Gallogly* and *Alexander J. Palamarchuk,* for defendants.

SHEPPARD, *J.,* May 5, 1997—This opinion is submitted in support of this court's order, dated February 25, 1997, denying plaintiffs' motions for partial judgment on the pleadings and granting judgment on the pleadings in favor of both defendants, Insurance Com-

pany of North America and Selective Way Insurance Company. For the reasons stated, the appeal should be denied and that order affirmed.

## FACTUAL BACKGROUND

This action was brought pursuant to the Pennsylvania Declaratory Judgment Act. 42 Pa.C.S. §7531 et seq. The genesis of this case is a lawsuit that was filed in this court against Consulting Engineers Inc. and Paul K. Goldberg, among others, captioned *Zlotnicki v. Goldberg,* CCP Phila. no. 3737, March Term, 1995, the "underlying action." The plaintiffs here, Consulting Engineers Inc. and Paul K. Goldberg, sought a judicial declaration that the Insurance Company of North America and/or the Selective Way Insurance Company must provide plaintiffs with a defense and indemnification in connection with the underlying action.

In the underlying action, the plaintiffs were sued for wrongful use of civil proceedings pursuant to 42 Pa.C.S. §§8351-8354. The complaint in the underlying action alleges that a lawsuit had been initiated on May 12, 1989, the "prior lawsuit," by Consulting and continued, allegedly maliciously, in the Court of Common Pleas of Montgomery County until April 1993, when summary judgment was granted against Consulting. In December 1993, the Superior Court affirmed the summary judgment. The prior lawsuit was then terminated on July 12, 1994, when the Supreme Court denied Consulting's petition for a permissive appeal.

Thereafter, the complaint was filed in the underlying action, alleging that the prior lawsuit was "initiated, prosecuted and continued by Consulting and Goldberg

without probable cause and for the purpose other than that of securing proper discovery, joinder of parties or the adjudication of claims." See amended complaint in the underlying action, paragraph 59. The underlying action is pending in this court in the 1995 Day Forward, Major Jury, Program. In that underlying action, Consulting and Goldberg have hired personal counsel because INA and Selective have refused to defend and indemnify them.

Previously, defendant INA had issued commercial general liability policies insuring Consulting and Goldberg for the period from December 19, 1990 to December 19, 1992. Subsequently, defendant Selective issued a business owner's policy insuring Consulting and Goldberg for the period from January 21, 1993 to January 21, 1996. The insurance policies of both INA and Selective state that the insurer will pay those sums that the insured becomes legally obligated to pay as damages: (a) because of personal injury to which this insurance applies (as stated by INA), and/or (b) because of personal injury caused by an occurrence covered by this insurance (as stated by Selective). Both policies include malicious prosecution in the definition of personal injury.

The refusal of both INA and Selective to defend and indemnify Consulting and Goldberg in the underlying action has led to this declaratory judgment action. Similar motions for partial judgment on the pleadings were filed by plaintiffs against both INA and Selective. INA and Selective responded separately to plaintiffs' motions and each sought judgment on the pleadings in its own right. This court, on February 3, 1997, held oral argument. On February 25, 1997, this court denied

plaintiffs' motions for partial judgment on the pleadings and, instead, granted judgment on the pleadings in favor of both INA and Selective. Plaintiffs now appeal.

## ISSUE PRESENTED

The issue presented is whether INA and Selective under the applicable "occurrence" policies must defend and/or indemnify plaintiffs for damages flowing from the tort of wrongful use of civil proceedings in an instance where the prior lawsuit was commenced before the policy periods but was continued during the policy periods. Stated differently, the issue is when does the personal injury occur from the tort of wrongful use of civil proceedings for purposes of insurance coverage.

This court holds that the triggering "event," in an instance of wrongful use of civil proceedings, which determines whether the carrier must provide coverage under an "occurrence" policy is when the allegedly wrongful civil suit is commenced. In reaching this conclusion, the undersigned notes that this is a question of first impression in this Commonwealth and looks, along with counsel, for guidance from the appellate court.

## DISCUSSION

### I. *Judgment on the Pleadings*

"After the relevant pleadings are closed, but within such time as not to unreasonably delay the trial, any party may move for judgment on the pleadings." Pa.R.C.P. 1034(a). A judgment on the pleadings may be granted only in cases where, based upon the pleadings themselves, and any documents properly attached

thereto, there are no material issues of fact, and the case is so clear that a trial would clearly be a fruitless exercise. *Rice v. Rice,* 468 Pa. 1, 6, 359 A.2d 782, 784 (1976). This is such a case.

Further, a court may enter a judgment in favor of any party whether or not the party entitled to relief has filed its own motion. *Boron v. Smith,* 380 Pa. 98, 102, 110 A.2d 169, 171 (1955). *Boron* stated that it would be irrational to deny judgment on the pleadings to a party simply because that party is not the one who made the motion. *Id.;* see also, *Bensalem Township School District v. Commonwealth,* 518 Pa. 581, 587, 544 A.2d 1318, 1321 (1988).

## II. *The Tort of Wrongful Use of Civil Proceedings Act*

Prior to February 19, 1981, the effective date of the Wrongful Use of Civil Proceedings Act, 42 Pa.C.S. §§8351-8354, "a person wronged by the initiation of a lawsuit could either allege a common law malicious use of process or an abuse of process." *Ludmer v. Nernberg,* 520 Pa. 218, 220-21, 553 A.2d 924, 925 (1989); *Publix Drug Co. v. Breyer Ice Cream Co.,* 347 Pa. 346, 32 A.2d 413 (1943). The common-law tort of malicious prosecution was codified as the statutory cause of action for wrongful use of civil proceedings. 42 Pa.C.S. §§8351-8354; *Matter of Larsen,* 532 Pa. 326, 440, 616 A.2d 529, 586 (1992); *Shaffer v. Stewart,* 326 Pa. Super. 135, 140, 473 A.2d 1017, 1019-20 (1984). Thus, a claim for wrongful use of civil proceedings qualifies as malicious prosecution for the purpose of insurance coverage. *Northwestern National Casualty*

*Co. v. Century III Chevrolet Inc.,* 863 F. Supp. 247 (W.D. Pa. 1994).

Essentially, under the Act, an action for wrongful use of civil proceedings may be maintained if the claimant establishes that: (a) the underlying suit was initiated or continued in a grossly negligent manner or without probable cause, and (b) the proceedings were terminated in favor of the party against whom they were commenced. 42 Pa.C.S. §8351(a)(1) & (2). Thus, a cause of action does not accrue until the party "wrongfully" sued has successfully defeated the attempt to have that party held legally liable. In this case, the cause of action did not accrue until July 12, 1994, when the Supreme Court denied Consulting's petition for a permissive appeal.

However, the date that the cause of action accrues is not necessarily the date that would determine when liability insurance coverage applies.

III. *In an Instance Involving a Wrongful Use of Process Suit, the Triggering Date for Purposes of Liability Insurance Coverage Is the Date of the Institution of the Alleged Tortious Lawsuit*

As noted, this court could find no Pennsylvania case on point holding when liability coverage is triggered under an "occurrence"-based policy in connection with a claim for wrongful use of civil proceedings.[1]

Here, INA and Selective contend that the "occurrence" policies provided coverage only as to liability arising from conduct occurring during the policy period.

---

1. This court was also unsuccessful in its search for guidance on this specific issue in the legislative history of the Act.

Thus, they argue, since the prior lawsuit was instituted prior to the respective, effective coverage periods, there is no duty to defend or indemnify. Consulting and Goldberg, on the other hand, argue that insurance coverage should be determined by reference to who was the insurer when the prior lawsuit was continued, or terminated, or under a "triple trigger" theory. Under the "triple trigger" theory, the duty to defend and indemnify would run to all insurance companies that provided coverage any time between the initiation of the prior lawsuit (brought and/or continued in a grossly negligent manner or without probable cause) and during the continuation of the suit and at the time of the termination of that suit.

Two minority jurisdictions have held that the date that triggers insurance coverage is the date on which the prior proceedings are favorably terminated in favor of the party suing the insured. *Roess v. St. Paul Fire & Marine Insurance Company,* 383 F. Supp. 1231 (M.D. Fla. 1974); *Security Mutual Casualty Co. v. Harbor Insurance Co.,* 65 Ill. App. 3d 198, 383 N.E.2d 1 (Ill. App. 1978), *reversed on other grounds,* 77 Ill. 2d 446, 397 N.E. 2d 839 (1979). This minority view holds that, since a cause of action for the tort of malicious prosecution does not accrue until all of the essential elements of the tort have materialized (*i.e.,* the favorable termination of the malicious prosecution in favor of the victim), an insurer that issued a policy after the date of the commencement of an allegedly malicious lawsuit, but extant during the continuation and at the time of its termination, would be required to defend and indemnify its insured.

Recently, the United States District Court for the Western District of Pennsylvania predicted that our Supreme Court would rule that the tort of malicious prosecution "occurs" for purposes of deciding liability coverage when the prior lawsuit is commenced. *City of Erie v. Guaranty National Insurance Company,* 935 F. Supp. 610, 615 (W.D. Pa. 1996). *City of Erie* involved a declaratory judgment action filed by the City of Erie against two of its insurers that had written insurance policies during the July 1, 1980 to January 1, 1995 period. The underlying action involved malicious prosecution which arose out of a criminal proceeding that was instituted in March 1980, and terminated in 1994. Because the prior criminal lawsuit was filed in March 1980, those insurers for the period of July 1, 1980 until January 1, 1995, did not have a duty to defend or indemnify the insured. *City of Erie,* 935 F. Supp. at 616.

In reaching this conclusion, the *City of Erie* court followed the majority rule that the tort of malicious prosecution "occurs" for the purpose of liability coverage when the prior lawsuit is commenced. See *Patterson Tallow Co. Inc. v. Royal Globe Insurance Cos.,* 89 N.J. 24, 444 A.2d 579 (1982); *Muller Fuel Oil Co. v. INA,* 95 N.J. Super. 564, 232 A.2d 168 (1967); *Ethicon Inc. v. Aetna Casualty & Surety Co.,* 688 F. Supp. 119 (S.D. N.Y. 1988); *Royal Indemnity Co. v. Werner,* 979 F.2d 1299 (8th Cir. 1992); *Southern Maryland Agricultural Association Inc. v. Bituminous Casualty Corp.,* 539 F. Supp. 1295 (D. Md. 1982); *S. Freedman & Sons v. Hartford Fire Insurance Co.,* 396 A.2d 195 (D.C. App. 1978); *Zurich Insurance Co. v. Peterson,* 188 Cal. App. 3d 438, 232 Cal. Rptr. 807 (1986); *Harbor*

*Insurance Co. v. Central National Insurance Co.,* 165 Cal. App. 3d 1029, 211 Cal. Rptr. 902 (1985); and *American Family Mutual Insurance Co. v. McMullin,* 869 S.W.2d 862 (Mo. App. 1994).

Admittedly, *City of Erie, supra,* involved a criminal prosecution as the prior lawsuit. Arguably, this prompted the court to look to the date of the commencement of the underlying lawsuit to take into account the "hardships, humiliation, suspense and expense to which an innocent person is subjected in an improper prosecution." *Id.,* 935 F. Supp. at 614, citing *Neczypor v. Jacobs,* 403 Pa. 303, 309, 169 A.2d 528, 531 (1961). This court suggests that the filing of a civil lawsuit also engenders hardships, suspense and expense for the party sued.[2]

Parenthetically, the *City of Erie* court did not refer to the Pennsylvania Supreme Court's decision in *Ludmer v. Nernberg,* 520 Pa. 218, 553 A.2d 924 (1989). In *Ludmer,* the issue was whether the Wrongful Use of Civil Proceedings Act was applicable to a complaint that was filed prior to the effective date of the Act. *Id.* The prior lawsuit that gave rise to a claim of wrongful use of civil proceedings action was filed in March 1979. Therefore, it was argued that applying the Act to *Ludmer* would result in the Act being retroactively applied because the Act was not in existence until February 19, 1981. *Id.* at 221, 553 A.2d at 925. The Supreme Court rejected the argument on retroactivity because one of the Act's requirements, that there is to be a favorable termination of the lawsuit, was not obtained until after

2. Typically, a defendant in a civil matter would not be subjected to the humiliation which a criminal defendant might experience.

the Act became effective. *Id.* at 222, 553 A.2d at 926.[3] *Ludmer,* however, may be distinguished in that it did not purport to determine insurance coverage issues for the tort of wrongful use of civil proceedings. Rather, *Ludmer* dealt, simply, with the issue of the retroactivity of the Act.

This court accepts the rationale set forth by the *City of Erie* court under the majority view and submits that the standard that should be applied to determine when coverage would attach is to look to the date that the prior lawsuit was commenced. Here, the prior lawsuit was filed on May 12, 1989, and that is the date on which the tort of wrongful use of civil proceedings occurred for the purposes of determining liability coverage. See *City of Erie, supra,* 935 F. Supp. at 616. INA did not provide insurance prior to December 19, 1990. Selective did not provide insurance prior to January 21, 1993. Thus, neither INA nor Selective had the duty to defend or indemnify Consulting and Goldberg in the underlying action.

IV. *The INA and Selective Insurance Policies Are Unambiguous and Insurance Coverage Is Not Triggered Because the Personal Injury Began Prior to but Continued During the Policy Periods*

Plaintiffs argue that INA and Selective are obligated to defend and indemnify the plaintiffs under the insurance policies because the policies are ambiguous regarding when a physical injury occurs. Plaintiffs contend that the language of the INA and Selective policies

---

3. The court made clear that the "cause of action did not accrue until such time as he successfully defeated the appellant in his attempts to have the appellee held legally liable." *Ludmer, supra* at 222, 553 A.2d at 926.

is ambiguous because there is an absence of specific language in the policies that requires an event to "occur" during the policy period to trigger coverage. Rather, the policies require only that the offense be committed during the policy period. Plaintiffs cite the rule that when ambiguities exist in an insurance policy provision, the policy is to be construed against the insurer and any reasonable interpretation offered by the insured must control. *Tonkovic v. State Farm Mutual Automobile Insurance Company,* 513 Pa. 445, 456, 521 A.2d 920, 926 (1987).

This court submits that these policies are unambiguous relative to determining liability coverage. Policy language is considered ambiguous only if reasonably intelligent persons would honestly differ as to its meaning, when considering it in the context of the entire policy. *Garber v. Travelers Insurance Companies,* 280 Pa. Super. 323, 421 A.2d 744 (1980). These policies were clearly written on an "occurrence basis." Both INA and Selective's policies state that liability coverage applies to personal injury only if caused by an offense, which was committed (or occurred) in the coverage territory during the policy period. INA's policy ran from December 19, 1990 to December 19, 1992. Selective's policy ran from January 21, 1993 to January 21, 1996. A reasonable person would understand the need for an offense to be committed during the coverage periods of the policies.

### V. *Public Policy Militates Against a Party Insuring Against a Physical Injury After the Initial Harm Was Committed*

No one should be permitted the opportunity to insure against liability for a personal injury which has already

occurred. *Appalachian Insurance Co. v. Liberty Mutual Insurance Company,* 676 F.2d 56, 63 (3d Cir. 1982). In that case, the Appalachian Insurance Company insured the Liberty Mutual Insurance Company from August 1, 1971 to August 1, 1974. The underlying employment discrimination suit against Liberty was settled by compensating those employees who were injured prior to the effective date of the insurance policy. *Id.* at 59. In a declaratory judgment action, the court determined that the employees were injured upon the promulgation of the discriminatory employment policies, which were effective before August 1, 1971. The court held, therefore, that Appalachian was not required to indemnify Liberty because the occurrence preceded the effective date of the insurance policy.

In this case, the plaintiffs apparently were *uninsured* at the time of commencement of the prior lawsuit. The purpose of insurance is to protect against future risks. Insurance cannot be purchased to protect against a risk that has already manifested itself, such as a risk already known and involving a continuing lawsuit. If the plaintiffs' theory were accepted, one could initiate a tortious lawsuit, and subsequently, when it seems clear it will be unsuccessful, shop for insurance to cover the potential loss. Further, in such an instance, by appealing the court's ruling in the prior lawsuit, one could dictate that there will not be a favorable termination until a later time. This would give that party time to purchase insurance. According to the plaintiffs' theory, this new insurance carrier would be required to defend and indemnify its insured for an injury that had, in fact, already occurred before the new insurance policy was purchased. Here, because the insurance policies in question

were not effective at the time of the complaint in the prior lawsuit, and the injury is deemed to have occurred at the institution of that prior lawsuit, Consulting and Goldberg should not be permitted to subsequently insure themselves against an injury that had already occurred.

## CONCLUSION

The undersigned deems this issue of first impression a difficult one. Reasonable arguments may be made that, under an occurrence policy, the triggering event to determine insurance coverage should be the favorable termination of the prior lawsuit or at such time as the party instituting the prior lawsuit (in good faith) becomes aware that that suit does not have a reasonable and good faith basis, and yet continues it nonetheless. At the same time, this court believes it is important to provide consistency and predictability to the liability insurance marketplace. Both the insured and the insurer have a need to know, with certitude, when coverage is triggered with respect to the tort of wrongful use of civil process. This court submits that its decision provides the better view and assures the desired consistency and predictability in the marketplace.

For the reasons stated, this court's order, denying the plaintiffs' motion for partial judgment on the pleadings and granting partial judgment on the pleadings in favor of the defendants INA and Selective, should be affirmed.